**Martin PATTERSON, Plaintiff–Appellant,**

v.

**HUGHES AIRCRAFT CO.; Hughes Salaried Employees' Income Insurance Plan, Defendants–third–party–Plaintiffs–Appellees,**

v.

**CENTENNIAL LIFE INSURANCE COMPANY, Third–party– Defendant–Appellee.**

No. 92–55069.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 10, 1993.

Decided Dec. 15, 1993.

Charles J. Fleishman, Beverly Hills, CA, for plaintiff-appellant.

Law Offices of Arthur W. Francis, Jr., a professional corp., Redondo, CA, for defendants-appellees.

Before: BROWNING, BRIGHT,* and TANG, Circuit Judges.

PER CURIAM:

Martin Patterson appeals the district court's judgment rejecting his claim under the Employee Retirement Income Security Act, 29 U.S.C. § 1132(a)(1) against an employee benefits plan and its insurance company.

Patterson worked for Hughes Aircraft Company (Hughes) and was covered by the Hughes Salaried Employees' Income Insurance Plan. Benefits under the Plan were paid by Centennial Insurance Company. Patterson filed a claim for disability benefits due to headaches. Centennial found him to-

tally disabled and began paying benefits. Centennial terminated the benefits two years later on the ground Patterson's disability was mental rather than physical, and that he had exhausted the policy's two-year limitation on benefits resulting from "mental, nervous or emotional disorders of any type." At Patterson's request, Centennial reviewed the termination of benefits twice, each time concluding his disability was mental and therefore subject to the limitation. Patterson sued Centennial in state court; Centennial removed the case to the court below.

After a one-day trial, the district court held (1) the term "mental disorder" in the Plan was not ambiguous, (2) Centennial did not abuse its discretion in denying benefits on the ground Patterson's disability was mental, (3) reviewing Centennial's decision de novo, Patterson's disability was mental, and (4) Patterson failed to prove total disability either during the claims process or at trial. This appeal followed.

**I**

The district court reviews denial of ERISA plan benefits "under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," in which case the administrator's decisions are reviewed for abuse of discretion. *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 114–15, 109 S.Ct. 948, 956–57, 103 L.Ed.2d 80 (1989). The Hughes Plan grants the plan administrator power to determine eligibility, and grants Centennial, as the administrator's fiduciary, authority to review that determination.[1] The Plan's language is comparable to plan provisions we have previously held conferred discretion.[2] The district court's re-

---

* The Honorable Myron H. Bright, Senior Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation.

1. The Plan instructs an employee to file a claim with the plan administrator, who will issue a "[w]ritten decision[] of approval or denial," including, in the event of a denial, a "clear reference to the Plan provisions upon which the denial is based." The claimant may then request a review of the denial by the insurance company, which, after a "full and fair evaluation," will also

issue a written decision that includes "specific reasons for the decision, with reference to Plan provisions on which the decision is based."

2. *See Bogue v. Ampex Corp.,* 976 F.2d 1319, 1324 (9th Cir.1992) ("The determination ... will be made by Allied–Signal upon consideration of whether the new position ... has responsibilities similar to those of your current position."); *Eley v. Boeing Co.,* 945 F.2d 276, 278 n. 2 (9th Cir. 1991) ("The Company shall determine the eligibility of a person for benefits under the plan,

view of the plan administrator's decision for abuse of discretion was therefore proper.

## II

The district court held Patterson had failed at trial and in the proceedings before the administrator to "provide adequate proof of the existence of any alleged total disability."

Patterson's total disability had already been conceded by Centennial in a joint pretrial order. The joint pretrial order included among undisputed facts that "[t]he plaintiff was found by Centennial to be totally disabled under the provisions of the Plan." The pretrial order specified the remaining disputed issue of fact to be "[t]he nature of plaintiff's disability." Centennial argues the pretrial order conceded only that Centennial had found Patterson to be disabled, not that Patterson was in fact disabled. Centennial's argument ignores the stipulated fact that Centennial itself made the disability determination.

A pretrial order generally supersedes the pleadings, and the parties are bound by its contents. Fed.R.Civ.Pro. 16; *United States v. Joyce*, 511 F.2d 1127, 1130 n. 1 (9th Cir. 1975) ("[T]he parties are bound by their agreement to limit the issues to be tried."). Since the pretrial order did not leave the question of Patterson's total disability open for determination at trial, the district court abused its discretion in deciding that issue.

## III

The Plan limits benefits for any disability "caused by or resulting from ... [m]ental, nervous or emotional disorders of any type," but does not define "mental disorder," or offer illustrations of conditions that are excluded or included. Patterson argues

the limitation provision is ambiguous, and if the ambiguities are resolved in his favor, the two-year limitation does not apply to the payment of benefits for his condition. While we review the decision of the plan administrator for abuse of discretion, we review *de novo* whether the Plan's terms are ambiguous. *Kunin v. Benefit Trust Life Ins. Co.*, 910 F.2d 534, 537 (9th Cir.1990).

Ambiguities in the Plan are to be resolved in Patterson's favor. *Id.* at 539; *Masella v. Blue Cross & Blue Shield of Connecticut, Inc.*, 936 F.2d 98, 107 (2d Cir. 1991); *Phillips v. Lincoln Nat'l Life Ins. Co.*, 978 F.2d 302, 310–11 (7th Cir.1992).[3] As applied to Patterson's apparent condition, the term "mental disorder" is ambiguous in two ways.

First, the Plan does not specify whether a disability is to be classified as "mental" by looking to the cause of the disability or to its symptoms. Since the ambiguity is to be resolved in Patterson's favor, his disability is not a mental disorder subject to the two-year limitation on payments if it is either manifested by headaches though caused by depression, or caused by headaches but manifested by depression. *See Kunin*, 910 F.2d at 541; *Phillips*, 978 F.2d at 310–11.

Second, the Plan does not make clear whether a disability qualifies as a "mental disorder" when it results from a combination of physical and mental factors. *See Kunin*, 910 F.2d at 541. Patterson's disability may result solely from depression, or solely from headaches, or from a combination of the two. Since this ambiguity must also be resolved in Patterson's favor, he is not within the limitation for mental disorders if his disability is caused in any part by headaches.

pursuant to the terms and conditions specified...."); *Jones v. Laborers Health & Welfare Trust Fund*, 906 F.2d 480, 481 (9th Cir.1990) ("The Board of Trustees shall have power ... to construe the provisions of this Trust Agreement and the Plan, and any such construction adopted by the Board in good faith shall be binding."); *see also Madden v. ITT Long Term Disability Plan*, 914 F.2d 1279, 1283–84 (9th Cir.1990) (where administrator's discretionary authority is delegated to a fiduciary, abuse of discretion stan-

dard applies to review of that fiduciary's decisions).

3. While the rule does not apply to ERISA plans that are the product of collective bargaining agreements reached after arms-length bargaining between parties of equal power, *see Eley v. Boeing Inc.*, 945 F.2d 276, 279–80 (9th Cir.1991), the parties have not argued this plan resulted from such a process.

The plan administrator and the district court did not follow this analysis. Instead, they concluded the term "mental disorder" was not ambiguous and reached the legal conclusion that Patterson's disability was "mental." Since the plan administrator and the district court did not recognize the ambiguity of the term "mental disorder," they failed to make the proper factual findings as to the nature of Patterson's disabling condition. Although Patterson's medical records indicate he has suffered from and been treated for both severe headaches and depression, the record contains no determination, by medical personnel, the plan administrator, or the district court, as to whether Patterson's disability was caused in whole or in part by headaches, by depression, or by a combination of the two.

We remand to the district court with instructions to remand to the plan administrator for a factual determination, based on the medical evidence in the record, as to the cause of Patterson's total disability. If Patterson's disability was caused solely by his depression, and his headaches are neither a cause nor a symptom of the depression, then his condition is subject to the two-year limitation by any possible meaning of the Plan's term "mental disorder." However, if Patterson's headaches contributed to his total disability, or they are either a cause or symptom of his depression, then Patterson's disability does not fall within the "mental disorder" limitation interpreted in his favor.

The judgment of the district court is reversed and the case remanded to the plan administrator for a finding and further proceedings consistent with this opinion.[4]

---

4. The parties' requests for attorney's fees are denied.